ROBERT P. ANDRIS
RANDRIS@GORDONREES.COM



ATTORNEYS AT LAW
275 BATTERY STREET, SUITE 2000
SAN FRANCISCO, CA 94111
PHONE: (415) 986-5900
FAX: (415) 986-8054
WWW.GORDONREES.COM

March 29, 2016

**VIA ECF FILING & FEDERAL EXPRESS**

Honorable James Donato
United States District Court
450 Golden Gate Avenue
Courtroom 11, 19th Floor
Northern District of California
San Francisco, CA 94120

      Re:    *Allied Lomar, Inc. v. Diageo North America, Inc*.
              United States District Court, Northern District of CA, San Francisco Division
              Case No.:  3:15-cv-03087-JD

Dear Judge Donato:

      This letter sets forth Plaintiff Allied Lomar, Inc.'s ("Allied") position with respect to the disputed language of the proposed protective order and explains how both Parties are proposing language that deviates from the U.S. Court of the Northern District of California's (NDCA) Model Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets ("Model Protective Order").

      This letter also responds to the letter briefs filed by Defendant Diageo North America, Inc. ("Diageo") filed on March 21, 2016 (ECF 45), and supplemented on March 25, 2016 (ECF 47).  This response also complies with Court Orders dated March 21 and March 25, ordering that Plaintiff address those matters raised in Diageo's letter briefs.  (ECF 46 and 49)  The Court has scheduled a telephonic appearance on March 30, 2016.  (ECF 49)  Allied respectfully requests this telephonic appearance be *in camera*, so Allied can respond candidly with respect to the specified irreparable harm of disclosing certain information without the risk of waiver of confidentiality.

      **Introduction:**

      This case is not simply a dispute between competitors in the same industry over the use of a trademark.  This is a battle between a small, local, family-owned distilled spirits business, Allied, which has owned a registered trademark for STITZEL since 2006 (Registration No. 3113783), against a global conglomerate that just began using the trademark in 2014 on the same product, distilled spirits, specifically whiskey.  Because of the importance of Diageo in this industry, the mere contact from Diageo will lead and has led to irreparable harm to Allied.

Honorable James Donato
March 29, 2016
Page 2

There is no dispute that Diageo is a much larger party, who is important in this industry. Diageo advertises that it has hundreds of distributors and thousands of dedicated distributor sales people.[1] Even the name "Diageo" itself is advertised to tout the global reach of the company: "The word Diageo comes from the Latin for day (dia) and the Greek for world (geo). We take this to mean every day, everywhere, people celebrate with our brands."[2] Diageo's list of brands on its website is impressive, including what Diageo calls its "Global giants": Johnny Walker, Smirnoff, Captain Morgan, Baileys, Tanqueray, and Guinness, as well as other brands, Ketel One Vodka, Ciroc, Don Julio Tequila, Crown Royal, and Bulleit Bourbon.[3] The brand of whiskey at issue in this lawsuit, "Blade and Bow," and the trademarks "Stitzel-Weller" are not listed on Diageo's website.

Meet and Confer Requirement:

As stated in Diageo's letter briefs, the Parties met and conferred telephonically, because Diageo's lead counsel is located in New York. The Parties' met and conferred several times, including on February 17, 23, and March 8. After Diageo filed the first letter brief, counsel for Allied called and spoke with counsel for Diageo on March 24, to see if there was any resolution to avoid Court intervention, during which the Parties confirmed the Parties were at an impasse as to the following three sections:

1. Expert Disclosure Procedures
2. In-House Counsel (or "House Counsel") disclosures and review
3. Highly Confidential-Irreparable Harm designations and procedures

Although it is not clear from Diageo's letter briefs (ECF 45 and 47), *both* Diageo and Allied seek relief from the Model Protective Order.

**Expert Disclosure Procedures**: *Diageo* requests that the Protective Order deviate from the Model Protective Order. Allied proposed the Model Protective Order language regarding expert disclosures. See Section 7.4(a)(2). (Attached as Exhibit A) Diageo does not want to disclose its experts prior to giving them Allied's highly confidential or attorneys' eyes only information. Allied's offer to compromise to accommodate Diageo's concern was rejected. See 7.4(a)(2), ECF 45-1, 15:10-17. Diageo proposes removal of all procedures related to disclosure of experts. Further, under Diageo's proposal, those who never provide an expert report would never be disclosed. Without *any* procedures, employees and industry experts could be "experts" who can review all documents and trade secret information without disclosure to Allied. Allied is open to compromise, but there must be some procedures in place.

**House Counsel**: *Diageo* proposes House Counsel be treated the same as Outside Counsel. *Allied* proposes alternative language precluding House Counsel from seeing documents or information designated as "Attorneys' Eyes Only" or "Irreparable Harm." The Model

---

[1] "Route to market in the United States is through the three-tier system and we distribute our products through more than 100 spirits distributors and brokers, and more than 400 beer distributors. We have a unique route to market for our spirits business in the United States, with more than 3,000 dedicated distributor sales people focused only on Diageo and Moët Hennessy brands." http://www.diageo.com/en-row/ourbusiness/ourregions/Pages/Diageo-North-America.aspx (as of March 29, 2016)
[2] http://www.diageo.com/en-row/ourbusiness/aboutus/Pages/default.aspx (as of March 29, 2016)
[3] http://www.diageo.com/en-us/ourbrands/Pages/StrategicBrands.aspx (as of March 29, 2016)

Honorable James Donato
March 29, 2016
Page 3

Protective Order contemplates that House Counsel may be treated differently from outside counsel. See e.g., Footnotes 4 and 11 of the Model Protective Order. (Attached as Exhibit A) Given the confidential nature of the information and the harm to Allied related to its disclosure, Allied will not agree to Diageo's "Designated House Counsel" seeing Allied's most confidential trade secret information. The Court must balance the risk of inadvertent disclosure of trade secrets to competitors against the risk that the protection of such information will impair a plaintiff's ability to prosecute its case. *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992) (no abuse of discretion where magistrate judge held an evidentiary hearing, during which in-house counsel testified, prior to issuing a protective order limiting access to attorneys' eyes only information). Here, Allied argues that knowledge of the trade secrets at issue would place Diageo's House Counsel in the "untenable position" of either refusing his or her employer legal advice or revealing the sensitive information. *Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 530-31 (N.D. Cal. 2000) (*citing Brown Bag*, 960 F.2d at 1472).

**"Highly Confidential-Irreparable Harm"** designation and procedures: <u>Allied</u> seeks relief that attempts to track the procedures and policy behind the Model Protective Order's language relating to "Source Code." Allied proposes these procedures based on the parties, the distilled spirits industry (with a three-tiered distribution system), and the irreparable harm to Allied if Diageo uses this information to cause harm to Allied's business. This confidential information (namely: customer list, contact information, distributors, and sources, as explained to Diageo's counsel) – like source code – are extremely sensitive trade secrets. The mere contact from Diageo, whether formally or informally, will cause and has caused irreparable harm. Further, this information is responsive to discovery requests and is required in order to show Allied's advertising and sales efforts since 2004, but this information is so sensitive that Allied does not want to disclose it to a large competitor. Allied is a small, family business, and tremendous harm would be done to their business if this information is used. For example, in response to a subpoena, a bottler and distributor has represented both that it has supply for Allied (See Exhibit B) and that it has not yet bottled for Allied, which is causing Allied irreparable harm. The irreparable harm to Allied will continue unless a reasonable protective order is entered. Allied should not have to choose between enforcing its trademark or its business.

Allied contends that this information is not only properly designated with a higher designation, but it also would meet the NDCA's "high threshold" and strict standards for filing under seal under Federal Rules of Civil Procedure 26(c) and Civil Local Rule 79-5. *See, e.g., Largan Precision Co v. Genius Elec. Optical Co.*, 2014 U.S. Dist. LEXIS 147653, *7 (N.D. Cal. Oct. 16, 2014) (the confidential identity of a third-party end manufacturer and third-party direct or indirect customers could be filed under seal as the public disclosure of this confidential information would allow individuals to gain insight into Genius's business practices, and may harm Genius's ability to compete in the optical lens marketplace.) Likewise, the disclosure of Allied's customer and source information would provide insight into Allied's business practices and harm Allied's ability to compete in the distilled spirits marketplace.

Honorable James Donato
March 29, 2016
Page 4

                Very truly yours,

                GORDON & REES LLP

                */s/ Robert P. Andris*

                Robert P. Andris, Esq.
                Michael D. Kanach, Esq.
                Attorneys for Plaintiff Allied Lomar, Inc.

RPA:ks
Attachment(s):  Exhibit A (Model Protective Order), Exhibit B

cc:     See attached Proof of Service and Service List

Honorable James Donato
March 29, 2016
Page 5

PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is: Gordon & Rees LLP 275 Battery Street, Suite 2000, San Francisco, CA 94111. On March 29, 2016, I served the within documents:

**PLAINTIFF ALLIED LOMAR, INC.'S DISCOVERY DISPUTE LETTER**

☐ by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☐ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in United States mail in the State of California at San Francisco, addressed as set forth below.

☐ by placing a true copy thereof enclosed in a sealed envelope, at a station designated for collection and processing of envelopes and packages for overnight delivery by FedEx as part of the ordinary business practices of Gordon & Rees LLP described below, addressed as follows:

☐ by placing a true copy thereof enclosed in a sealed envelope, at a station designated for collection and processing of envelopes and packages for overnight delivery by DHL as part of the ordinary business practices of Gordon & Rees LLP described below, addressed as follows:

☒ by Electronic Transmission based on a court order or an agreement of the parties to accept service by email or electronic transmission. I am readily familiar with Gordon & Rees LLP's practices for transmitting documents by electronic mail via internet service provider. I caused the documents to be sent to the persons at the email addresses listed for each addressee on the attached service list. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐ by transmitting via ELECTRONIC FILING within the ECF System for the USDC – Northern District of California, the document(s) listed above on this date before 5:00 p.m.

**Please see attached SERVICE LIST**

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on March 29, 2016, at San Francisco, California.

*/s/ Kibibi N. Shaw*

Kibibi N. Shaw

Honorable James Donato
March 29, 2016
Page 6

## **SERVICE LIST**

Rochelle D. Alpert, Esq.
Sharon R. Smith, Esq.
MORGAN LEWIS & BROCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA  94105
(415) 442-1000 tel
(415) 442-1001 fax
Emails:  ralpert@morganlewis.com; srsmith@morganlewis.com

Brendan J. O'Rourke, Esq.
Lee Popkin, Esq.
PROSKAUER ROSE LLP
11 Times Square
New York, NY  10036
(212) 969-3000 tel
(212) 969-2900 fax
Emails:  borourke@proskauer.com; lpopkin@proskauer.com

Attorneys for Defendant,
DIAGEO NORTH AMERICA, INC

1107346/27423708v.1

ALABAMA ♦ ARIZONA ♦ CALIFORNIA ♦ COLORADO ♦ CONNECTICUT ♦ FLORIDA ♦ GEORGIA ♦ ILLINOIS ♦ MARYLAND ♦ MASSACHUSETTS ♦  MISSOURI ♦ NEVADA ♦ NEW JERSEY ♦ NEW YORK ♦ NORTH CAROLINA ♦ OREGON ♦ PENNSYLVANIA ♦ SOUTH CAROLINA ♦ SOUTH DAKOTA ♦ TEXAS ♦ VIRGINIA ♦ WASHINGTON ♦ WASHINGTON, DC